## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**UNITED STATES OF AMERICA**

v.                                                                             CASE NO: 5:18-cr-9-Oc-27PRL

**GERMAN DE JESUS VENTURA**

_____

### REPORT & RECOMMENDATION[1]

Defendant, German De Jesus Ventura, an inmate at the Coleman Federal Correctional Complex, is charged by indictment with assault with a dangerous weapon and possessing a prohibited object. (Doc. 1). Ventura has filed multiple motions seeking to dismiss the indictment, (Doc. 56, 57), to exclude evidence of his prior bad acts and statements made to investigators about the incident, (Doc. 58, 60), and to compel the government to produce certain evidence as required by *Brady* and *Giglio*. (Doc. 59).

The Court held a hearing on the motions on January 16, 2019, at which both sides presented evidence and argument. On referral from the district judge, I submit that the motions to dismiss are due to be denied. I also submit that the motions to exclude and suppress evidence are due to be denied as moot, as the government has agreed to submit neither in its case-in-chief unless the defense opens the door to such evidence. Finally, I submit that Defendant's motion to compel is due to be denied, as set forth below, but that the government comply (as is directed) with the inquiries and productions it agreed to make at the hearing.

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636(b)(1), and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

**I.     BACKGROUND**

Ventura is alleged to have attacked Luis Guedea-Veloz with a piece of solid metal while both men were inmates at FCC Coleman. (Doc. 1). Video of the incident taken from the Bureau of Prison's (BOP) security cameras shows that the victim was attacked from behind and violently struck in the head before falling unconscious to the ground where he remained until medical personnel from the prison came to the his aid.[2] The identity of the attacker is not entirely clear from the video (i.e., you don't see his face, but you can see his body), and Veloz told BOP investigators that he had no independent recollection of the immediate incident. But the video does appear to show a correctional officer, alleged to be Officer Kevin Mansukhani, pulling the attacker out of the ensuing scrum and detaining him. The government intends to call that officer at trial.

The BOP investigated the attack and disciplined Ventura for the incident, disallowing forty-one days of "good conduct" time, revoking his phone privilege for 180 days, and placing him in disciplinary segregation for thirty days. (Doc. 57-1). During the prison investigation, Ventura made statements to investigators acknowledging he committed the attack. (Doc. 60-1). Likewise, Veloz told investigators that Ventura had been "causing problems" for him recently and suspected that the attack was gang related. (Gov. Exh. 1). Veloz, however, could not identify his attacker.

The case is currently scheduled for trial on the February 2019 trial term. (Doc. 50). Ventura is represented by CJA attorney, Mr. H. Manuel Hernandez, Esq. (Doc. 34, 35). Ventura was previously represented by the Federal Public Defenders Office as well as an earlier CJA attorney. (Doc. 21).

---

[2] The Court reviewed three videos of the attack taken from three different angles. At the hearing, the government informed the Court that there is a fourth video of the incident, but the parties agreed that the fourth video did not provide additional information that was significant to the issues here.

**II.   DISCUSSION**

Defendant's motions fall broadly into three categories: (1) his two motions to dismiss (Doc. 56, 57); (2) his two motions to exclude or suppress certain evidence at trial (Doc. 58, 60); and (3) his motion to compel production of certain documents. (Doc. 59).

**A.  Motions to Dismiss**

Ventura moves to dismiss the indictment based on (1) the unavailability of the victim as a witness and (2) a violation of his double jeopardy rights.

*1.  Deportation of the Alleged Victim*

To begin, the victim in this case, Mr. Veloz, was removed from the country shortly after the indictment against Ventura was filed. (Doc. 56-4, p.3). There appears to be no dispute that he completed his own term of imprisonment and was due to be deported as an illegal alien. The government notified Ventura's previous counsel, the Federal Public Defender, of the pending removal when counsel was appointed on March 26, 2018. (Def. Exh. 1). Veloz was then removed ten days later, on April 5. (*Id.*). The government interviewed Veloz before his removal and provided notes of those interviews to the defense. *See* (Gov. Exh. 1).

Ventura argues that the government's actions violate his Sixth Amendment right to "compulsory process for obtaining witnesses in his favor," as well as his Fifth Amendment due process right to "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).[3]

---

[3] Ventura's motion raises two additional claims: (1) an ineffective assistance of counsel based on his former attorneys' failure to interview the victim; and (2) a confrontation clause claim. Courts generally do not consider ineffective assistance of counsel claims on direct appeal, but rather at the district court level through a 28 U.S.C. § 2255 motion. *Ochoa v. United States*, 569 F. App'x 843, 845 (11th Cir. 2014). Ventura has provided no support for considering an ineffective assistance of counsel claim before trial and judgment.

As to Ventura's supposed confrontation clause claim, the Sixth Amendment guarantees the right of the accused to confront "the witnesses against him." *See Crawford v. Washington*, 541 U.S. 36 (2004)

3

Both claims contain similar requirements that the testimony sought be both material and favorable to the defense. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) (explaining that much of the Sixth Amendment compulsory process standard is burrowed from the Fifth Amendment due process clause). The Supreme Court has specifically recognized in the case of a deported witness that sanctions can only be imposed on the government if "the criminal defendant makes a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *Valenzuela-Bernal*, 458 U.S. at 872. In other words, the defendant "must show some reasonable basis to believe that the deported witness would testify to material and favorable facts." *United States v. Saintil*, 753 F.2d 984, 987 (11th Cir. 1985). The determination of materiality is "evaluated in the context of the entire record." *Valenzuela-Bernal*, 458 U.S. at 874 n.10.

Ventura, here, has not met his burden to show a reasonable basis to believe that Veloz's testimony would result in any material or favorable evidence in his favor. First of all, Veloz specifically stated in an interview with the BOP that he would not have provided testimony in this case. (Doc. 60-2). Even assuming Veloz could have been persuaded to change his position and testify, Ventura has not shown how Veloz's testimony that he could not identify his attacker would be material to his guilt or innocence. *See United States v. Schaefer*, 709 F. 2d 1383, 1385 (11th Cir. 1983) (explaining that testimony that a witness "did not get a good look at the criminal is not probative of guilt or innocence").

---

(explaining the meaning of the confrontation clause). The clause includes not just the right to confront witnesses in court but also to confront "witnesses" who "bear testimony" against the defendant in the form of out-of-court statements admitted at trial. *Id.* at 51. Yet, here, there is no allegation that Veloz has made any statement that would be introduced at trial.

4

The notes from an interview given by Veloz to the BOP show that Veloz had no independent memory of the attack but had only "learned who assaulted him from other inmates." (Gov. Exh. 1). Veloz reported that he "did not see Ventura approach him from behind, but did see the weapon used to assault him after he fell and was lying on the floor," which he described as a "square piece of metal with a lanyard attached to one end." (*Id.*). The video evidence of the attack corroborates that account as it clearly shows the victim being attacked from behind and struck directly on the head (with no prior opportunity to see the attacker before he is struck), then lying apparently unconscious (or at least visibly motionless in a pool of what appears to be blood) on the ground until medical personnel arrive. Nothing about this scenario provides a reasonable basis to believe that Veloz's inability to identify Ventura is probative of either guilt or innocence. The Eleventh Circuit has noted in somewhat similar circumstances that the fact that a "witness might testify he is unable to identify the defendant seems hardly favorable" to the defendant. *Schaefer*, 709 F.2d at 1385.

In fact, as to the favorability of the evidence, it appears that Veloz's few recollections may very well be harmful to Ventura as Veloz recounted that he "frequently had problems with [Ventura]" and that Ventura "was causing problems and disrespecting" members of Veloz's gang. (Gov. Exh. 1). Veloz's testimony would seem, if anything, to mainly provide a potential motive for the attack, which would be favorable to the government. And that he could testify that he saw the weapon after the attack—the weapon the correctional officer is expected to testify he retrieved—would also appear to favor the government or at least not be favorable to his defense.

Inasmuch as Ventura wishes to establish through Veloz's testimony that Veloz was a dangerous gang leader and Ventura had to strike first, this testimony would be unavailing as it is well-established that self-defense is only available as a defense when the defendant "reasonably

5

believes that he is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger." *United States v. Middleton*, 690 F. 2d 820, 826 (11th Cir. 1982). There is no evidence that there was any immediate threat to Ventura.

The only potentially useful bit of testimony Ventura has identified is Veloz's hypothetical testimony that he had other enemies within the prison and was a member of a prison gang. Yet, there are certainly other witnesses at the prison who could testify to Veloz's having other enemies at the prison if Ventura wishes to make this point. *See Valenzuela-Bernal*, 458 U.S. at 873 (requiring a showing that evidence is "not merely cumulative to the testimony of available witnesses").

Finally, while not dispositive here, it is noteworthy that Ventura had an opportunity to interview Veloz before he was removed, and his previous attorney did not pursue that opportunity—although, admittedly, the time to do so was rather limited.

Accordingly, Ventura's motion to dismiss is due to be denied as he has not met his burden to make a plausible showing that the testimony of Mr. Veloz would be either material or favorable to his defense.

   2. *Double Jeopardy*

Next, Ventura argues that the indictment should be dismissed because the double jeopardy clause of the Fifth Amendment prohibits trying him for this offense. He maintains that he was previously punished by the BOP for the alleged actions at issue here and that the sanctions he received constituted a criminal punishment. (Doc. 57-1).

The double jeopardy clause prohibits "a second prosecution for the same offense after acquittal," "a second prosecution for the same offense after conviction," and "multiple punishments for the same offense." *U.S. v. Mayes*, 158 F.3d 1215, 1219 (11th Cir. 1998) (quoting

*North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). However, it is well-established that regulations authorizing prison disciplinary sanctions are not classified as "criminal," nor are they so punitive as to transfer them into a criminal penalty. *Id.* at 1224. Therefore, a prison's discipline of an inmate does not preclude subsequent criminal prosecution against the same inmate for the same conduct under the double jeopardy clause. *Id.* at 1224–25.

While recognizing the controlling precedent against his position, Ventura nevertheless requests the Court disregard that precedent without offering a compelling rational for doing so.[4] Accordingly, the motion to dismiss is due to be denied on this issue as well.

### B. Motions to Exclude and Suppress Evidence

Ventura also moves to suppress statements he made to BOP officials investigating the incident here as well as to exclude evidence of prior bad acts that the government could seek to enter into evidence.

#### 1. Miranda *Warnings*

"Custodial statements made by a defendant without the benefit of *Miranda* warnings are not admissible in the prosecution's case-in-chief, but may be used for impeachment purposes, provided that the statements are voluntary." *U.S. v. Louis*, 157 F. App'x 165, 169 (11th Cir. 2005). A statement is custodial "whenever law enforcement officers question a person after taking that person into custody or otherwise significantly deprive a person of freedom of action." *Garcia v. Singletary*, 13 F.3d 1487, 1489 (11th Cir. 1994). When the defendant was incarcerated at the time of the statement, restricted freedom "implies a change in the surroundings of the prisoner which

---

[4] Ventura refers to a recent case taken up by the Supreme Court on the double jeopardy clause and requests the Court stay this case pending that decision. *Gamble v. United States*, 138 S.Ct. 2707 (2018) (granting petition for certiorari). That case, however, deals with the unrelated issue of the exception to the double-jeopardy clause for dual prosecutions by separate sovereigns. *See United States v. Gamble*, 694 F. App'x 750 (11th Cir. 2017). As such, the pending case is unrelated to Ventura's claim and a stay is inappropriate.

7

results in an added imposition on his freedom of movement." *Id.* at 1492 (quoting *Cervantes v. Walker*, 589 F.2d 424, 428 (9th Cir. 1978). The totality of circumstances surrounding the statement must be considered in determining whether the prisoner had restricted freedom at the time of the statement. *Id.*

Here, Ventura contends that he was in custody at the time when prison investigators questioned him about the incident. The government, for its part, has agreed not to use Ventura's pre-*Miranda* statements during its case-in-chief. As the government also points out, however, the statements might be admissible in rebuttal. *See Harris v. New York*, 401 U.S. 222, 225–26 (1971). Given that the government has agreed not to use the statements in its case-in-chief, the issue is moot. And at this point the Court cannot speculate as to whether such statements would or would not be admissible for the limited purpose of rebuttal, and the Court expresses no view on the merits of that issue.

    *2. Prior Bad Acts*

Federal Rule of Evidence 404(b) prohibits the use of a defendant's prior crime or wrong act as evidence of a person's character in order to prove that the defendant acted in accordance with that character on a particular occasion. Fed. R. Evid. 404(b). However, "inadmissible extrinsic evidence is admissible on redirect [examination] as rebuttal evidence, when defense counsel has opened the door to such evidence during cross examination." *United States v. Collier*, 385 F. App'x 876, 878 (11th Cir. 2010) (alteration in original) (quoting *United States v. West*, 898 F.2d 1493, 1500 (11th Cir. 1990)); *see also U.S. v. Johnson*, 730 F.2d 683, 690–91 (11th Cir. 1984) (allowing extrinsic acts evidence on rebuttal even where the prejudicial effect outweighed the probative value of that same evidence during the case-in-chief).

As with the *Miranda* issue, the government has stated that it does not intend to introduce any evidence of Ventura's prior crimes or wrong acts during its case-in-chief. Again, however, the admissibility of such evidence in rebuttal would depend on the extent to which the defendant has opened the door to that evidence. Accordingly, this motion is also due to be denied as moot.

### C. Motion Requesting Specific *Kyles, Brady*, and *Giglio* Material

Finally, in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." "The defendant's right to the disclosure of favorable evidence, however, does not 'create a broad, constitutionally required right of discovery.'" *United States v. Jordan*, 316 F.3d 1215, 1251 (11th Cir. 2003) (quoting *United States v. Bagley*, 473 U.S. 667, 675 n.7 (1985)). Under *Brady*, then, the government "need only disclose during pretrial discovery (or later, at the trial) evidence which, in the eyes of a neutral and objective observer, could alter the outcome of the proceedings." *Id.* at 1252.

When the defendant makes only a "a general request for exculpatory material under *Brady*, the government decides which information must be disclosed." *Id.* at n.81. The defendant may request specific information in the government's file that he believes is "material" for *Brady* purposes, but "mere speculation or allegations that the prosecution possesses exculpatory information will not suffice to prove 'materiality.' The defendant must show that there is a reasonable probability the evidence could affect the outcome of the trial." *Id.*

Also, under Federal Rule of Criminal Procedure 16(a)(1)(E), the government must disclose documents and objects that are "material to preparing the defense" where the defendant makes a "specific request for the item together with an explanation of how it will be 'helpful to the defense.'" *Jordan*, 316 F.3d at 1250. The defendant must show "more than that the item bears

9

some abstract logical relationship to the issues in the case. There must be some indication that the pretrial disclosure of the item would enable the defendant significantly to alter the quantum of proof in his favor." *Id.* at 1251 (internal quotation marks and alterations omitted). Ventura requests several categories of material, which the Court will address in turn.

*1. Post-Orders*

Ventura requests "Post-Orders and all updates for the year prior to and after the incident for the BOP officer manning the metal detector at the door leading to the outside yard for Unit B, U.S. Penitentiary 1 (U.S. P 1), Coleman Federal Correctional Institution." At the hearing, the government objected to the breadth of the request, and expressed some security concerns about these orders, but agreed to provide the specific orders applicable to Officer Mansukhani (who was manning the metal detector and will be the government's witness to the incident at trial) to Mr. Hernandez on the condition that they not be disseminated outside of his legal team. Mr. Hernandez agreed.

Accordingly, the government is directed to provide the post orders applicable to Officer Mansukhani at the time of the incident on or before January 25, 2019. Mr. Hernandez is prohibited from disseminating those orders, in any form, outside of his legal team without a prior written order from the Court.

*2. Alien File of Mr. Gueda-Veloz*

In addition, Ventura requests the A-File or "alien file" for Mr. Veloz, which includes information on his removal. The government agreed at the hearing to provide Veloz's most recent order of removal as well as his initial order of removal. Mr. Hernadez stated he was satisfied with this production. The Court will order those orders to be produced on or before January 25, 2019 as well.

*3. Disciplinary Hearing Officer Reports*

Ventura also seeks the disciplinary hearing officer reports for the three other prisoners involved in or related to the incident. The government explained at the hearing that it had obtained reports for two of the prisoners and would provide those to the defense. According to the government, there was no report for the third inmate. Thus, the Court will order the government to provide both disciplinary reports on or before January 25, 2019.

*4. Personnel File*

Next, Ventura requests Officer Mansukhani's personnel file and disciplinary history. Ventura cites *United States v. Henthorn* for the proposition that the government is obligated, upon request and without any showing of materiality, to review the officer's personnel file whenever requested by the defendant and then to turn over any *Brady* or *Giglio* material. 931 F.2d 29, 31 (9th Cir. 1991). Further, Ventura argues that once requested, and based solely on the request itself, the government is at least required to produce the officer's files to the court for in camera review.

The Eleventh Circuit, however, declined to follow *Henthorn*. *See United States v. Quinn*, 123 F.3d 1415, 1421–22 (11th Cir. 1997). Indeed, in *Quinn*, where no showing of materiality was made (and the defendant's contention for the records was referred to as speculative) the court affirmed the district court's order denying the motion for discovery and stated simply that the government was obliged to furnish counsel with *Brady* and *Giglio* material, but declined to "instruct the Government on the manner in which to discharge its obligations." *Id*. at 1421-22. In *Quinn*, citing its prior opinion in *United States v. Pitt*, 717 F.2d 1334 (11th Cir. 1983), the court also rejected the argument that disclosure was required for the court's inspection where the defendant failed to demonstrate the file contained material evidence. *Id*. Here, Ventura has not made a materiality showing and his mere request for the files, without more, does not compel

production to him or to the court for inspection. Of course, the government is still obliged to comply with its requirements under *Brady* and *Giglio*.

In fact, the government stated that it planned to meet with Officer Mansukhani and to make a full inquiry with him to ensure the compliance the government's counsel acknowledged was required, and accordingly to review all necessary files to ensure proper disclosure of *Brady* and *Giglio* material. The Court will direct the government to do so by January 25, 2019.

### 5. *Criminal Charge Information*

Ventura also requests records related to three other inmates or a confirmation that criminal charges were not filed against any of the inmates. The government confirmed in its response and at the hearing that criminal charges were not filed against the other inmates.

### 6. *Separation Orders*

Next Ventura seeks "any separation orders or instructions" for him from the BOP. The government states that it did not dispute that the orders would be relevant but that such orders did not exist. The government offered, however, to review its records and to verify in writing with Mr. Hernandez that no such records exists. The government is directed to do so on or before January 25, 2019.

### 7. *Gang-related Threats*

Ventura requests any communications or documents related to threats made by the victim against him or members of prison gangs. The government avers that it has provided all of the information that it has related to this inquiry. Ventura has not requested any more specific documents at this time.

   *8.* Brady *Specific Request*

Finally, Ventura requests any *Brady* or *Giglio* material related to any other government witnesses. The government represented that it did not plan to call any other fact witnesses.

### III. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Defendant's motions to dismiss the indictment be **denied** (Doc. 56, 57) and that his motion to suppress statements and motion in limine both be **denied as moot**. (Doc. 58, 60). Finally, because the government has either responded to the request, expressly stated no such items exist, or has otherwise agreed to make appropriate productions as discussed above (to which the defense agrees), the motion to compel is due to be **denied as moot** as to those items. And because the Defendant has failed to meet its burden as to materiality with respect to the personnel files, that request is simply due to be **denied**. The government is, however, directed to conduct the inquiries and productions it agreed to make at the hearing as set forth above.

   **Recommended** in Ocala, Florida, on January 18, 2019.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties