UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

vs.   Case No. 5:18-CR-9-OC-27PRL

GERMAN DE JESUS VENTURA
_____/

## ORDER

**BEFORE THE COURT** are the Report and Recommendation of the Magistrate Judge and Defendant's objections (Dkts. 78, 79). Defendant's objections are overruled. After a *de novo* review of the record, including the BOP video recording of the incident, the Report and Recommendation is adopted and approved with one exception. Defendant's Motions to Dismiss (Dkts. 56, 57) are DENIED. His Motion to Suppress (Dkt. 60) is DENIED. His Motion in Limine (Dkt. 58) is GRANTED.

### Standard of Review

A Magistrate Judge's report and recommendation may be accepted, rejected or modified. 28 U.S.C. § 636(b)(1). Those portions of the report and recommendation to which objection is made are accorded *de novo* review. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). Objections must "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see Leatherwood v. Anna's Linens Co.*, 384 Fed. App'x. 853, 857 (11th Cir. 2010). In the absence of specific objections, there is no requirement that findings be reviewed *de novo*. *Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Nevertheless, the report and recommendation is reviewed for "clear error" even in the absence of objections. *Macort v. Prem, Inc.*, 208 Fed. App'x. 781, 784 (11th Cir. 2006). And legal conclusions are reviewed *de novo*, even

1

in the absence of an objection. *See LeCroy v. McNeil*, 397 Fed. App'x. 554, 556 (11th Cir. 2010) (citing *United States v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982).

**Motion to Dismiss Based on Deportation of Victim (Dkt. 56)**

Defendant moved to dismiss the Indictment based on the deportation of the alleged victim, Veloz, contending that he was deprived of his right to confront Veloz and his right to due process, a fair trial and the ability to present a complete defense (Dkt. 56). Essentially, he contends that his prior counsel was not provided adequate notice of Veloz' deportation and was therefore deprived of an opportunity to interview him. Attached to the motion are screen shots showing the attack on Veloz and correspondence from the Assistant United States Attorney confirming that he provided notice to Defendant's prior counsel of Veloz'"pending deportation." (Dkt. 56, attachments 1-4). The Assistant also advised that Veloz told investigators "that he was unaware of the identity of his attacker until he was told by other inmates after he awoke, and that he had no memory of the attack itself."[1]

Defendant must show more than "the mere absence of testimony" to establish a violation of his right to confrontation. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S. Ct. 3440, 3446, 73 L. Ed. 2d 1193 (1982). He must show that he was deprived of "compulsory process for obtaining *witnesses in his favor*." *Id.* (emphasis in original). As the Supreme Court instructs, he "cannot establish a violation of his constitutional right to compulsory process merely by showing that deportation of the [victim] deprived him of [his] testimony. He must at least make some plausible

---

[1] The Magistrate found that Veloz was deported after as an illegal alien after completing of his sentence. Defendant seemingly takes issue with this finding, but confesses he has "no idea why the alleged victim was deported." (Dkt. 79, p. 3). And he confirms that he makes "no suggestion that government counsel engaged in any intentional misconduct" regarding the notice of the pending deportation provided to prior defense counsel. (Dkt. 79, n. 2). It is undisputed that Velox was deported after the incident. There is, therefore, no factual dispute that he was deported as an illegal alien without improper motive on the part of the Government. This is not, therefore. a claim that by virtue of the deportation, the government suppressed evidence favorable to Defendant.

2

showing of how their testimony would have been both material and favorable to his defense." *Id.*

> To summarize, the responsibility of the Executive Branch faithfully to execute the immigration policy adopted by Congress justifies the prompt deportation of illegal-alien witnesses upon the Executive's good-faith determination that they possess no evidence favorable to the defendant in a criminal prosecution. The mere fact that the Government deports such witnesses is not sufficient to establish a violation of the Compulsory Process Clause of the Sixth Amendment or the Due Process Clause of the Fifth Amendment. A violation of these provisions requires some showing that the evidence lost would be both material and favorable to the defense.

*Valenzuela-Bernal*, 458 U.S. at 872–73.

The Magistrate Judge followed *Valenzuela-Bernal*, noting that Defendant was required to make a "a plausible showing that the testimony of the deported witness would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." And he correctly found that Defendant had not met his burden of showing that "Veloz' testimony would result in any material or favorable evidence in his favor." Indeed, as the Magistrate Judge found, Veloz could not identify his attacker and his inability to identify his attacker is not probative of guilt or innocence. *United States v. Schaefer*, 709 F.2d 1383, 1384 (11th Cir. 1983). And while Defendant is correct that he should be afforded "some leeway for the fact that [he] necessarily proffers a description of the material evidence rather than the evidence itself," his proffer falls well short of the requisite showing of material and favorable evidence.

First, any "confusion or contradiction" about whether Veloz was rendered unconscious or was conscious and could have seen who attacked him is immaterial since Veloz told investigators that he was unable to identify his attacker. And the video corroborates Veloz' version of the attack. In any event, as the Magistrate Judge correctly found, Veloz told investigators that Defendant had caused problems for him and "was causing problems and disrespecting" members of Veloz' gang, hardly favorable evidence. Defendant offers nothing to demonstrate that whatever Veloz may have

3

seen would be favorable. He maintains only that he "wanted to present evidence about the alleged victim's gang affiliation and the likelihood that he had many enemies who may have wanted to do him harm." (Dkt. 79, n. 3). *Id.* The Magistrate Judge correctly found that this evidence could be presented through other witnesses. Implicit in that finding is a finding that Defendant has not demonstrated that Velox could offer any material evidence favorable to the defense.

In sum, to the extent Defendant objects to the Magistrate Judge's findings, the record supports those findings and Defendant has not shown clear error and the Magistrate Judge's legal conclusions, after a de novo review, are correct. The Report and Recommendation is therefore adopted and approved. Defendant's Motion to Dismiss Indictment Based on the Deportation of the Alleged Victim (Dkt. 56) is DENIED.

**Motion to Dismiss Based on Double Jeopardy Clause (Dkt. 57)**

Defendant moved to dismiss the indictment based on a violation of the Double Jeopardy Clause, contending that his BOP administrative punishment bars his subsequent criminal prosecution (Dkt. 57). The Magistrate Judge correctly rejected this contention, concluding that "it is well established that regulations authorizing prison disciplinary sanctions are not classified as 'criminal,' nor are they so punitive as to transfer then into a criminal penalty," *citing United States v. Mayes,* 158 F.3d 1215, 1224 (11th Cir.1998). After a *de novo* review, the Magistrate Judge's legal conclusion was correct. Under binding Circuit precedent, prison disciplinary sanctions do not constitute a criminal prosecution under the Double Jeopardy Clause. The Report and Recommendation is therefore adopted and approved and Defendant's Motion to Dismiss Indictment Based on the Double Jeopardy Clause (Dkt. 57) is DENIED.

**Motion to Suppress Statements (Dkt. 60)**

Defendant moved to suppress statements he made to BOP investigators, contending that the

4

statements were involuntary because he was not read his Miranda warnings in Spanish before making the statements (Dkt. 60). The United States agreed not to introduce the statements during its case-in-chief. I agree with the Magistrate Judge that the issue is moot and therefore Defendant's motion (Dkt. 60) is DENIED as moot.[2]

**Motion in Limine to Exclude Evidence of Other Acts Under Fed.R.Evid. 404(b) (Dkt. 58).**

Defendant moved in limine to preclude the admission of certain prior "bad acts" during the Government's case-in-chief under Rule 404(b) (Dkt. 58). Defendant's concern is with evidence of other inmate confrontations he has had while in BOP custody and "acts of violence" related to his sex trafficking conviction which the Government may attempt to introduce during rebuttal or if he "opens the door" at trial. He acknowledges that a three step test must be satisfied under Rule 404(b) before any such evidence may be introduced.[3]

The United States has agreed not to introduce any evidence of Defendant's prior crimes or wrongs in its case-in-chief. Accordingly, the Magistrate Judge recommends that Defendant's motion be denied as moot, although recognizing that such evidence may be admissible in rebuttal to the extent "defendant has opened the door to that evidence." I disagree. Defendant's Motion in Limine (Dkt. 58) is GRANTED. The United States is prohibited from referring to, commenting on or introducing any such evidence without first approaching the court outside the presence of the jury and satisfying the three step test outlined above.

**Motion Requesting Specific *Kyles*, *Brady* and *Giglio* Exculpatory and Impeachment Material**

---

[2] This does not adjudicate whether the statements may become admissible on rebuttal, or if Defendant testifies at trial.

[3] The evidence is admissible if: "(1) the evidence is relevant to an issue other than a defendant's character, (2) there is sufficient proof to allow a jury to find that the defendant committed the act by a preponderance of the evidence, and (3) the evidence's probative value is not substantially outweighed by the risk of unfair prejudice under Rule 403." *United States v. Green*, 873 F.3d 846, 858 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 2620, 201 L. Ed. 2d 1031 (2018).

5

(Dkt. 59).

Defendant moved to compel the United States to provide the "complete personnel and disciplinary file of BOP Officer K. Mansukhani, the Government's witness who will identify Defendant as the attacker (Dkt. 59). He objects to the Report and Recommendation only to the extent that the Magistrate Judge denied his request for an in camera review "of the one file of one witness for the very specific materials requested." (Dkt. 79 at p. 20).

The Magistrate Judge directed the United States to review the files "to ensure proper disclosure of Brady and Giglio material." In recommending that the request for an in camera review of Officer Mansukhani's personnel file be denied, the Magistrate Judge followed binding Circuit precedent, *United States v. Quinn*, 123 F.3d 1415, 1421-22 (11th Cir. 1997). In *Quinn*, the Eleventh Circuit declined to follow *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), which held that the court must conduct an in camera review of personnel files when the government is uncertain about the materiality of the information in the files.

Accordingly, on *de novo* review, the Magistrate Judge was correct in concluding that the government has the obligation of reviewing Officer Mansukhani's personnel file and disclosing any *Brady* and *Giglio* material, and in the absence of a showing of materiality, the court is not required to conduct an in camera review of the file.

**DONE AND ORDERED** this 28th day of January, 2019.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record